IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.                                                  Civ. No. 12-2

FUNDS IN THE AMOUNT OF $38,298.24
SEIZED FROM THE BANKRUPTCY TRUSTEE,

REAL PROPERTY 6644 BABY'S TEAR PLACE
SPRING VALLEY, NEVADA,

MORE PARTICULARLY DESCRIBED AS:
LOT ONE HUNDRED THIRTY-TWO (132) IN BLOCK TWO (2)
OF FINAL MAP OF UNIT 6-PARCEL 24 AT RHODES RANCH,
AS SHOWN BY MAP THEREOF ON FILE IN BOOK 24 OF PLATS,
PAGE 84, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.,

    *Defendants,*
and

DOUGLAS VAUGHAN,

    *Claimant.*

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff states:

### JURISDICTION AND VENUE

1.     This is a civil action *in rem* for forfeiture of defendant which is located in the District of New Mexico; and during the pendency of this action defendant, or its equivalent or proceeds thereof, will be subject to the jurisdiction of this Court.

2.     The United States District Court for the District of New Mexico has exclusive, original jurisdiction under 28 U.S.C. §§ 1345, 1355 and 1356.

3.     Venue is proper under 28 U.S.C. §§ 1355 and 1395.

4. The "res" or property which is the subject of this action consists of the following:

    a). Funds in the amount of $38,298.24 seized from the Bankruptcy Trustee (hereafter referred to as "Defendant Funds");

    b). Real Property located at 6644 Baby's Tear Place Spring Valley, Nevada and more particularly described as:

> LOT ONE HUNDRED THIRTY-TWO (132) IN BLOCK TWO (2) OF FINAL MAP OF UNIT 6- PARCEL 24 AT RHODES RANCH, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 24 OF PLATS, PAGE 84, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA

(hereafter referred to as "Defendant Real Property")

(collectively referred to as "Defendant Property.")

## PARTIES AND CLAIMANTS

5. The following persons may claim an interest in Defendant Property:

    (a). Douglas Vaughan has already agreed to forfeit his right, title, and interest in Defendant Property. See ¶¶ 16-17.

## STATEMENT OF FACTS

6. On February 24, 2011, Douglas F. Vaughan was indicted by a grand jury in *U.S. v. Douglas F. Vaughan,* Criminal No. 10-404 BB (Doc. 2), charging him with wire fraud and mail fraud via a "Ponzi scheme," i.e., investment fraud involving the payment of purported returns to existing investors from funds contributed by other investors. Vaughan began his Ponzi scheme in or about April 1993.

7. Vaughan began an investment program in which he accepted money from investors in exchange for interest-bearing promissory notes. This program began with

approximately nine investors investing an approximate total of $200,000. The promissory notes contained the following language purporting to limit the size of the promissory note program: "This Note is one of an issue of Promissory Notes in the aggregate principal amount not to exceed [a sum certain of money] and issued in various denominations, interest rates, and maturities." Between 1993 and 2010, the sum certain identified in the promissory notes increased gradually but never exceeded $2,500,000. In addition to the Vaughan Company Realtors (VCR) corporate promise to repay investors and the properties pledged to the Deed of Trust, the promissory notes also purportedly were collateralized by a "Personal Guarantee" signed by Vaughan. The guarantee signified that Vaughan was promising, in his personal capacity, to pay the promissory notes.

8. By at least 2005, the promissory note program had become the primary source of8revenue for VCR. Vaughan continued to distribute substantially the same marketing materials, sign the same promissory notes and make the same corporate and personal guarantees.

9. Vaughan represented to investors that he would not extend more than $2,500,000 in promissory notes, but he knew the aggregate principal balance owed to the note holders in the promissory note program substantially exceeded that amount, based on VCR's internal accounting records or VCR's corporate tax returns. At the end of 2004, the approximate aggregate principal balance was over $24 million, over $32 million at the end of 2005, over $39 million at the end of 2006, over $49 million at the end of 2007, over $62 million at the end of 2008, and over $74 million at the end of 2009.

10. Vaughan used the proceeds from the promissory note program for personal expenses, including:

   a. to construct and furnish a mansion overlooking the Tanoan golf course in

        Albuquerque, New Mexico;

   b.    to buy a Ferrari;

   c.    to buy an ownership interest in a developmental professional basketball league; and

   d.    to pay costs associated with frequent travel and entertainment in Las Vegas, Nevada.

11.    On or about February 22, 2010, Vaughan filed for personal and corporate bankruptcy protection. The aggregate principal balance that he and VCR owed was over $74 million to approximately 600 note holders. The interest expense owed to the investors exceeded $1 million per month. Vaughan asserted a negative net worth when he filed for bankruptcy.

12.    Most tangible assets were included in the bankruptcy and subsequently sold by the bankruptcy trustee in an effort to recoup some of the investors' losses.

13.    On July 25, 2011, Vaughan's personal property was auctioned, including jewelry and home furnishings he had purchased with investor proceeds from the Ponzi scheme. Vaughan was to receive 65% of the proceeds of the auction after allowances were taken for items he wished to keep and pay for accordingly. After allowances and the auctioneer's expenses, the percentages were applied to the remaining balance and Vaughan was due to receive $38,298.24 (the Defendant Funds).

14.    The auctioneer provided Vaughan's auction proceeds to the Bankruptcy Trustee, and Vaughan's auction proceeds (the Defendant Funds, $38,298.24) were seized from the Bankruptcy Trustee. On July 30, 2011, the Bankruptcy Trustee provided the FBI with a check in the amount of $38,298.24.

15.    Vaughan purchased the Defendant Real Property with investors' funds from the

Ponzi scheme.

16. On December 21, 2011, Douglas Vaughan pleaded guilty to wire and mail fraud (10CR404 BB, Doc. 125, Plea Agreement). In his Plea Agreement, Vaughan agreed to forfeit to the United States all of his right, title and interest in:

    a. the Defendant Funds ($38,298.24); and

    b. the Defendant Real Property (6644 Baby's Tear Place, Spring Valley, Nevada). (10CR404 BB, Doc. 125, pp. 7-8.)

17. In his Plea Agreement, Vaughan agreed to "waive the right to notice of any forfeiture proceeding involving the above-described property." (10CR404 BB, Doc. 125, ¶ 18.)

### CLAIM FOR RELIEF

18. Defendant Property is subject to arrest and forfeiture under 18 U.S.C. § 981(a)(1)(C) as property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1341.

19. Defendant Property is subject to arrest and forfeiture under 18 U.S.C. § 981(a)(1)(C) as property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343.

WHEREFORE: Plaintiff seeks arrest of Defendant Property and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimant and any Unknown Claimants to the Defendant Property, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

KENNETH J. GONZALES
United States Attorney

STEPHEN R. KOTZ
CYNTHIA L. WEISMAN
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, New Mexico  87103-0607
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the United States Federal Bureau of Investigation who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 12/31/2011

David Backlund, Special Agent
Federal Bureau of Investigation